**118**

James L. ROBERTSON, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 1067.

United States District Court
S. D. West Virginia,
at Huntington.

Nov. 17, 1961.

James E. Nelson, Quinlan, Nelson & Williamson, Huntington, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Charleston, W. Va., and J. Frank Eaton, Asst. U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

This is an action under the Federal Tort Claims Act, 28 U.S.C. § 2674, and jurisdiction is conferred on this court by 28 U.S.C. § 1346. There was very little conflict in the testimony relating to the accident itself, and there was no conflict in the medical testimony concerning the plaintiff's injury.

On September 1, 1959, the plaintiff, James L. Robertson, was riding his 1948 Harley-Davidson motorcycle and was proceeding east on Madison Avenue in Huntington, West Virginia, at a speed of 25 to 30 miles per hour. It was a clear day and the streets were dry. The speed limit in this area was 30 miles per hour. He was within 50 feet of the intersection of Madison Avenue and Seventeenth Street when a government owned automobile, being driven by John J. Leegan, District Engineer with the United States Bureau of Public Roads, Department of Commerce, and occupied by 3 employees of the West Virginia State Road Commission, started through the intersection by proceeding south on Seventeenth Street.[1] Leegan had stopped the car prior to entering the intersection in compliance with a stop sign on the northwest corner of the intersection; however, his visibility to the west on Madison Avenue was restricted because of several cars which were parked on Madison Avenue at the northwest corner of the intersection. The motorcycle was traveling along Madison Avenue, one of the main east-west traffic arteries of the city. There was no stop sign on Madison Avenue as there was on Seventeenth Street, and the approaching motorcycle had the right of way. There was considerable traffic at the moment on Madison Avenue. Nevertheless, Leegan started through the intersection and, upon seeing plaintiff's approaching motorcycle as the car reached the center of the

---

1. There was no dispute as to the fact that Mr. Leegan was performing the duties of his office at the time of the accident.

intersection, accelerated the automobile in an effort to pass in front of the approaching motorcycle and clear the intersection. Plaintiff first saw the automobile when the front end thereof reached the middle of the intersection. Plaintiff applied his brakes and attempted to turn his motorcycle to the left so as to swerve around the rear of the car; however, the distance closed too quickly and the right side of the motorcycle collided with the right rear fender of the automobile. Plaintiff was thrown through the air and landed east of the intersection on Madison Avenue.

Plaintiff, age 29 at the time of the accident, was brought by ambulance to the Cabell-Huntington Hospital where X-rays were taken of the lower end of the spine which included the sacrum and coccyx. The sacrum is the lower part of the bony spine, and it has five segments. These segments are fused to the coccygeal segments which are commonly referred to as the tailbone. The sacrum combines the two pelvic bones posteriorly and is above the coccyx. It is the keystone of the arch of the pelvis. Dr. Charles E. McKay, chief radiologist at the Cabell-Huntington Hospital, interpreted these X-rays as showing a disalignment of the fourth sacral segment in relation to the third. Dr. McKay's opinion was that the disalignment was due to a traumatic fracture of the sacrum, especially since plaintiff had no prior history of injury or congenital abnormality. The two doctors who examined plaintiff on behalf of the government concurred in the opinion that there was a disalignment and also a fracture of the sacrum.

Plaintiff also sustained lacerations, abrasions and contusions as a result of the collision, and the portion of his anatomy around his lower spine and hips was severely swollen and tender to palpitation, causing much pain for a long period of time. He remained in bed at home for a week; it was three weeks before he could walk without an aid of some kind, and it was three or four months before he could walk without pain. Additional medical testimony indicated that while the sacral injury is non-operable, the condition usually does improve and the pain is decreased after a period of several years. This was borne out by the plaintiff's own testimony that he now only experiences pain if he is seated for a sustained period of two or three hours or more. He weighs 200 pounds. He experiences no pain in walking, lifting or in exercise. Changes in the weather cause him no trouble.

Thus, the only time when plaintiff experiences discomfort is when he sits for a sustained period; however, for five years prior to the accident plaintiff had been employed as a taxicab driver in the City of Huntington. He tried to continue this occupation after the accident but could only work at short intervals due to the pain he would have while occupying his cab. Under these conditions he worked for the cab company for approximately one year. He is now employed as a gas station attendant and has no difficulty in performing this work.

As a result of the accident, plaintiff's motorcycle was damaged in the amount of $150. Plaintiff incurred expenses of $3 for ambulance fees, $15 for the X-rays at Cabell-Huntington Hospital, $25 for treatment at the Guthrie Hospital. While recuperating, plaintiff lost $175 in wages.

■■ It is clear that the government employee was negligent in entering the intersection under the traffic conditions and under conditions of limited visibility in the direction from which plaintiff approached, and in attempting to pass in front of the approaching motorcycle. It is clear also that this negligence was the proximate cause of the injury sustained by plaintiff and that plaintiff was not guilty of contributory negligence. Judgment is rendered in favor of plaintiff and against defendant, and plaintiff's damages are assessed at $4,500, which the court finds to be fair and reasonable compensation for the injuries and damages sustained.

The above opinion constitutes the findings of fact and conclusions of law of the court.